UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 13-153-DLB-EBA

JOYCE WILLIAMS                                                                                      PLAINTIFF

vs.                             MEMORANDUM OPINION AND ORDER

ASHLAND HOSPITAL CORPORATION
d/b/a KING'S DAUGHTERS MEDICAL CENTER                                      DEFENDANT

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Joyce Williams alleges that her former employer, Defendant Ashland Hospital Corporation, doing business as King's Daughters Medical Center (KDMC), terminated her because of her age in violation of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ann. § 344.040(1). KDMC moves for summary judgment, arguing that it eliminated Williams' position as part of a reduction in force. (Doc. 39). KDMC's motion is now fully briefed and ripe for review. (Docs. 39, 42, 43). Because Williams has presented no evidence from which a reasonable juror could conclude that KDMC singled her out for discharge because of her age, the Court will grant KDMC's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Williams began working at KDMC as a registered nurse in 1976 and spent her entire career in the Behavioral Medicine Unit (BMU). (Doc. 39-2 at 22). KDMC promoted her to nurse manager in 1992, and in 1998 she became clinical supervisor. (*Id.* at 23, 25). In 2000, KDMC granted Williams' request to be moved to the case manager position. (*Id.* at 29). As case manager, Williams' primary responsibility was to contact the payor source for

each patient to determine that patient's coverage. (*Id.* at 30; Ex. 3 at 32; Ex. 6 at 12-13). However, she continued to provide some nursing care and had significant patient contact. (Doc. 39-2 at 29-36). Williams was the only case manager in the BMU. (*Id.* at 59; Ex. 3 at 22).

The BMU went through a decline in patient census in 2012. (Doc. 39-3 at 14-15; Ex. 6 at 10). As a result, KDMC reduced the BMU from a twenty-seven (27) bed unit to a twelve (12) bed unit. (Doc. 39-3 at 15; Ex. 6 at 11). A few weeks later KDMC restored six beds, which brought the BMU to its current eighteen (18) bed occupancy. (Doc. 39-3 at 15). Because of the census decline, KDMC decided to reduce the number of BMU staff. (*Id.*). Mona Thompson, Vice President of Quality, was given sole authority over whom to terminate. (*Id.*; Ex. 6 at 10). In deciding whom to terminate, she evaluated their discipline history, performance record, and seniority in job class. (Doc.39-3 at 16).

Thompson did not apply the above-mentioned criteria to Williams because she was the only employee in the case manager class. (*Id.* at 22, 40, 59-60). Instead, Thompson decided to eliminate the case manager position, and consequently KDMC terminated Williams' employment. (*Id.* at 23). Thompson explained that she made this decision because a majority of BMU patients had become self-pay Medicare and Medicaid, which did not require a phone call to a payor source. (*Id.* at 24). Williams was sixty-six (66) years old when KDMC terminated her employment on May 31, 2012. (Doc. 42 at 2; Doc. 39-2 at 73).

The responsibility to call payor sources was ultimately absorbed by two clinical social workers, Jeff Fleming and Debbie Hoy. (Doc. 39-3 at 24; Ex. 7 at 10-11; Ex. 8 at 7-10; Ex. 6 at 15-16). Despite taking on this additional task, Fleming and Hoy continued to

2

perform all of their previous duties. (Doc. 39-7 at 10-11; Ex. 8 at 7-10). KDMC has never replaced or reinstituted the case manager position. (Doc. 39-3 at 24, 35).

In response to KDMC's summary judgment motion, Williams has attached an affidavit from a former nurse in the BMU, Roberta Farris. (Doc. 42-4). Williams was on vacation when KDMC fired her, and during that time Farris was filling in as case manager. (*Id.* at ¶ 6). Farris states that Miranda Tussey, a KDMC employee charged with overseeing the case manager position and the BMU, asked her if she wanted to take over for Williams. (*Id.*). Farris believed that the job was hers if she wanted it, but shortly thereafter, Tussey told her that the social workers would take over the case manager duties. (*Id.* at ¶¶ 9, 12). Based on business records KDMC has submitted, there is no more than a four year age difference between Williams and Farris. (Doc. 43-1). Williams confirmed in her deposition that Farris is "four or five years younger than me." (Doc. 39-2 at 61).

Williams testified that on at least two occasions Tussey asked her if she was going to retire, including the week she was terminated. (Doc. 39-2 at 80). Farris states that she "heard Miranda Tussey on multiple occasions say or insinuate to Ms. Williams whether she is considering retiring soon." (Doc. 42-4 at ¶ 5). Tussey contends that although she spoke with Williams about her retirement plans, Williams was always the one who broached the subject. (Doc. 39-6 at 20).

Williams does not contest that KDMC reduced its workforce in response to the decline in patients it served. What she does "dispute is the fact that they brought back nurses who had been there many, many years less than I had been . . . and did not have the qualifications that I had." (Doc. 39-2 at 55). KDMC recalled some of the nursing positions that it had previously terminated when it increased the BMU from a twelve (12)

3

bed unit to an eighteen (18) bed unit. (Doc. 39-6 at 24). These positions were posted both internally and on KDMC's public website. (Doc. 39-3 at 40-41). The first few months after KDMC terminated Williams she would search KDMC's website to see if there were any job postings in the BMU, but eventually she quit looking. (Doc. 39-2 at 73-74). Williams never asked to be reassigned to another position within the hospital, nor did she apply for any of the nursing positions that KDMC refilled. (*Id.*). The BMU has never returned to its original staffing numbers. (Doc. 39-6 at 18).

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party must cite to evidence in the record upon which "a reasonable jury could return a verdict " in its favor; a mere "scintilla of evidence" will not do. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-52 (1986). At summary judgment, a court "views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

### B.  Disability Discrimination and FMLA retaliation

In addition to age discrimination, Williams also brings disability discrimination and FMLA retaliation claims. (Doc. 1-2 at Counts I and II). KDMC has moved for summary

judgment, arguing that Williams cannot make out a prima facie case for either. (Doc. 39). In her Response, Williams concedes that "[a]fter reviewing witness testimony as well as all the documents and company records, Plaintiff avers that in good faith she cannot establish a prima facie case for FMLA retaliation or for disability discrimination." (Doc. 42 at 9). Williams having conceded that she cannot meet her burden under Federal Rule of Civil Procedure 56(c)(1) and *Liberty Lobby*, 477 U.S. at 248-52, these claims are **dismissed**.

### C. The Court Will Exercise its Discretion to Retain Supplemental Jurisdiction Over Williams' State-law Age Discrimination Claim

With the dismissal of Williams' federal claims, all that remains is her state-law age discrimination claim.[1] Normally, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). However, remand is a matter of discretion, and in exercising that discretion, a "district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state-law issues." *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Retention of state law claims is proper when a case has been on the court's docket for two years, discovery is complete, and the parties have fully briefed a summary judgment motion. *Taylor v. First America Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992).

This case is similar to *Taylor*: it has been on the Court's docket for nearly two years (Doc. 1); discovery is complete (Doc. 7); and KDMC's Motion for Summary Judgment is ripe for review (Doc. 39, 42, 43). As a result, the Court is now "familiar with the facts of the

---

1) On September 3, 2014, the Court granted the parties' joint motion to dismiss the other named Defendant, Timothy Holbrook. (Doc. 28).

case and [has] already . . . invested significant time in the litigation." *Harper v. AutoAlliance Intern. Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). Most importantly, comity presents no concern, as "[c]laims brought under the KCRA are analyzed in the same manner as ADEA claims." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (internal quotation marks omitted); *Williams v. Wal–Mart Stores*, Inc., 184 S.W.3d 492, 495 (Ky. 2005). Thus, the Court will not be called upon to needlessly decide state-law issues. Because remand would "waste[] judicial resources and result[] in additional delay," *Taylor*, 973 F.2d at 1288, the Court will retain jurisdiction over Williams' KCRA age-discrimination claim and adjudicate the remainder of KDMC's summary judgment motion.

**D.     Age Discrimination**

The KCRA makes it unlawful for an employer to "discharge any individual[ ] or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . . ." Ky. Rev. Stat. Ann. § 344.040(1)(a). As mentioned *supra*, the KCRA is interpreted in the same manner as the ADEA, *Allen*, 545 F.3d at 393–94, so the Court will rely on federal law in conducting its analysis.

**1.     There is no direct evidence of age discrimination**

A plaintiff may establish an ADEA violation by either direct or circumstantial evidence. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009). Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In a direct-evidence case, the plaintiff must prove "by a preponderance of the evidence ... that age was the 'but-for' cause

6

of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 & n. 4 (2009)).

As Williams states, "[d]irect evidence in this case is limited to the comments Ms. Tussey made to [her]." (Doc. 42 at 6). Williams is referring to Tussey's inquiries into when she planned to retire. Farris stated that this happened on multiple occasions, but Williams could only specifically recall two incidents. (Doc. 39-2 at 80). Accepting this as true, the Court agrees with Williams' concession that "Ms. Tussey's comments alone cannot establish enough evidence for an age discrimination claim." (Doc. 42 at 6). Perhaps when Tussey asked the question she was concerned whether she would need to find a replacement for Williams. Or maybe if Williams was planning on retiring soon, KDMC would have waited for her to retire instead of terminating her. Either way, the ADEA does not require employers to make employment decisions in the dark. Tussey's statements "only acknowledge the truth that workers near the age of 60 are nearer to retirement . . . and are not evidence of 'inaccurate and stigmatizing stereotypes.'" *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 534 (6th Cir. 2006); *Rowan*, 360 F.3d at 548 (holding that "a concern about impending retirements . . . is not the same as a bias against age"). The Court will now analyze whether there is circumstantial evidence of age discrimination.

    **2.    Williams cannot make out a prima facie case of age discrimination**

Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Allen*, 545 F.3d at 394 (internal quotation marks omitted). When a plaintiff fails to present direct evidence of age discrimination, the claim is analyzed under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), burden-shifting framework. *Blizzard v.*

*Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). Under this standard, the plaintiff is initially charged with making out a prima facie case of age discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once the plaintiff establishes her prima facie case, the defendant must then "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the defendant does so, "the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003). Although the burden of production shifts between the parties, the "burden of persuasion remains on the plaintiff to demonstrate that age was the 'but-for' cause of her employer's adverse action." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima face case of termination because of age discrimination, a plaintiff must prove four elements: (1) she is a member of the protected class (age forty (40) and older); (2) she was qualified for the job; (3) she was terminated; and (4) she was replaced by a "significantly younger person" or "treated differently from similarly situated employees outside the protected class." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Williams was in her sixties when KDMC terminated her and the record reflects that she performed her job proficiently. However, KDMC contends that Williams cannot prove the last element of her prima facie case. Specifically, KDMC argues that she was not replaced by a significantly younger person and cannot meet the heightened burden placed on a plaintiff who is terminated as part of a work force reduction.

### a. Williams was not replaced

As an initial matter, Williams has not shown that she was replaced by a significantly younger person. Rather, her position was eliminated, her duties absorbed by social workers at the hospital who continued to perform their previous responsibilities, and KDMC has never hired a new case manager. (Doc. 39-3 at 23, 24, 25; Ex. 6 at 15-16; Ex. 7 at 10-14; Ex. 8 at 7-10). An employer does not replace an age discrimination plaintiff when it redistributes her duties to existing staff in lieu of hiring a new employee. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010) (holding that a plaintiff did not show that "she was replaced because she [did] not show that another employee was hired or reassigned to perform her duties"); *Mayhue v. Cherry St. Servs.*, Inc., 598 F. App'x 392, 402 (6th Cir. 2015) ("[I]n satisfying the fourth prong of a plaintiff's prima facie case, it is not enough to show that 'another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir.1990))).

### b. Williams has not presented additional evidence of age discrimination as required in a reduction in force case

Since KDMC terminated Williams as part of a work force reduction, she must provide "additional direct, circumstantial, or statistical evidence tending to indicate that [KDMC] singled [her] out . . . for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. Thus, "she carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991).

> The Sixth Circuit defines a work force reduction in the following manner:
>
> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. A person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties. A person is not considered replaced when his duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work.

*Geiger*, 579 F.3d at 623 (quoting *Barnes*, 896 F.2d at 1565). "Eliminating a single job is sufficient to constitute a legitimate reduction in force." *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 992 (6th Cir. 2009).

There is no genuine dispute that KDMC eliminated Williams' case manager position as part of an overall staff reduction and that her duties were absorbed by clinical workers at the hospital. This sequence of events is supported by every individual deposed in this case, including Williams. (Doc. 39-2 at 55; Ex. 3 at 69; Exs. 7, 8; Doc. 42-4 at ¶ 12). Williams suggests that KDMC did not decide to eliminate her position until she "informed Defendant KDMC–through her exit interview–that she believe[d] age was a factor." (Doc. 42-1 at 7). Yet, Williams points to no evidence supporting this assertion. *See* Fed. R. Civ. Pro. 56(c)(1)(A) (stating that parties must support factual positions by "citing to particular parts of materials in the record"). To be sure, Williams testified that she did not speak with anyone from human resources about her termination. (*Id.* at 50). According to her deposition, the only KDMC representative she spoke with was nurse manager Stephanie Hughes, who informed her that her position was eliminated. (*Id.* at 50, 72-73, 84-85). Thompson also denies conducting an exit interview with Williams. (Doc. 42-3 at 68-69).

10

Furthermore, although Farris suggests that Tussey offered her the case manager position, she later states that Tussey "told me that the social workers would start performing the duties of case manager. At that time, I trained Jeff Fleming and Debbie Hoy– two social workers–how to do the Case Management duties." (Doc. 42-4 at ¶ 12). Fleming's and Hoy's depositions confirm that they indeed took over the case manager position duties, while continuing to perform their responsibilities as social workers. (Doc. 39-7,8).

Because KDMC made a strategic business decision to eliminate Williams' case manager position, and since they reassigned her work to other employees in the hospital, the Court concludes that Williams was terminated as part of a work force reduction. Accordingly, Williams must point to "additional direct, circumstantial, or statistical evidence tending to indicate that [KDMC] singled [her out] for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. In a work-force-reduction case, "the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.* at 1466.

As an initial matter, Williams suggests that the Court cannot consider KDMC's reason for terminating her when analyzing whether she has established a prima facie case, citing *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). This is a correct statement of the law. However, when there is a work force reduction, Sixth Circuit case law is clear that a plaintiff must provide additional discriminatory evidence to establish a prima facie case. At least twice in the past year, the Sixth Circuit Court of Appeals has considered whether there was a work force reduction when evaluating a plaintiff's prima facie case, and required that plaintiff to produce additional evidence of discrimination.

11

*Mayhue*, 598 F. App'x at 401-02; *Slapak v. Tiger Mgmt. Grp., LLC*, 594 F. App'x 290, 295 (6th Cir. 2014). The Court will follow this binding precedent.

Williams points to the following as circumstantial evidence that she was terminated because of her age: (1) Tussey's questions and/or comments about her retirement plans; (2) Tussey's offer to Farris to take over the case manager position; (3) younger nurses were retained as part of the work force reduction; and (4) she was not reassigned to one of the nurse positions and was not rehired as a nurse when KDMC increased its staff after the initial layoffs.

Tussey asked Williams at least twice about her retirement plans. (Doc. 39-2 at 80). However, on the facts here, Tussey's questions do not provide evidence of age discrimination. First, there is no indication from Williams' deposition or Farris' affidavit that the questions were based on the type of "inaccurate and stigmatizing stereotypes" the ADEA is designed to prevent. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Williams testified that Tussey asked her when she was going to retire, and that she told Tussey she was not sure. (Doc. 39-2 at 81). Tussey's questions recognize the truth that an employee in her sixties is near the standard retirement age, and provides no inference that Tussey believed Williams could not perform her job proficiently. *See Williams*, 161 F. App'x at 534. To the contrary, Tussey testified that Williams "was a great team member." (Doc. 39-6 at 21). No evidence in the record supports Williams' argument that Tussey "urged" her to retire. (Doc. 42 at 6).

And even if Tussey's statements did reveal a bias against older workers, it would be of no consequence. Tussey had no say in the decision to terminate Williams. (Doc. 39-6 at 10; Ex. 3 at 15). Therefore, her statements cannot provide evidence of age

12

discrimination. *Geiger*, 579 F.3d at 624 ("Rokicki's comments about Geiger's retirement are not pertinent because Geiger has not presented any evidence to show that Rokicki was involved in the decision to hire Strong or terminate Geiger."); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990) ("[A] statement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official.").

Williams also cites Tussey's offer to Farris to take over the case manager position. But if this occurred, it actually cuts against a finding of age discrimination. Farris was sixty-two (62) at the time Tussey made the job offer, making her only four years younger than Williams. (Doc. 43-1). An inference of discriminatory intent "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Grosjean*, 349 F.3d at 336. In the Sixth Circuit, an age difference of six years or less is insignificant as a matter of law. *Id.* at 340. This recognizes that an employer cannot discriminate against someone on the basis of age by treating a similarly aged employee more favorably.

KDMC's treatment and retention of other nurses in the BMU also does not provide circumstantial evidence of age discrimination. Because Williams was a case manager, she was not similarly situated to the nurses. Therefore, no inference of discrimination arises from Thompson's decision not to evaluate Williams using the criteria she applied to the nursing staff. Moreover, Williams provides no statistical evidence comparing the ages of the nurses fired and retained. The only evidence on that point is Williams' testimony that the other nurses in the BMU were "much younger than me." (Doc. 39-2 at 60). However, an employer's decision to retain a statistically insignificant number of younger employees during a work force reduction does not establish a prima facie case of age discrimination.

13

*Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 511 (6th Cir. 2010) ("That Swann decided to retain the two younger, less-experienced Hankins and Dziadkowiec, also does not satisfy the additional evidence requirement."); *Reminder v. Roadway Express, Inc.*, 215 F. App'x 481, 483-84 (6th Cir. 2007) (per curiam) (concluding that a plaintiff did not establish a prima facie case of age discrimination in a work force reduction case even though younger workers were retained); *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468, 470 (6th Cir. 2005) (same).

### c. Williams cannot establish a prima facie failure-to-rehire claim

Lastly, Williams argues that KDMC's decision not to reassign her as a nurse or rehire her once nursing positions became available is evidence of age discrimination. When KDMC decided to eliminate the case manager position, it had no duty to reassign Williams to another position in the hospital. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986) ("Where an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company."); *Almond v. ABB Indus. Sys., Inc.*, 56 F App'x. 672, 678 (6th Cir. 2003) (same). However, the Sixth Circuit does recognize failure-to-rehire claims.[2] To establish a prima facie failure-to-rehire claim, a plaintiff must show, among other elements, that she "applied for the available position or can establish that the employer was otherwise obligated to consider h[er]." *Owens v. Wellmont, Inc.*, 343 F. App'x 18, 24 (6th Cir. 2009) (quoting *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir.1989)).

---

2) The parties did not address the case law dealing with failure-to-rehire claims. But since Williams raised the issue throughout her deposition and in her response to KDMC's motion, the Court will apply the applicable law to test whether Williams has stated a claim that can survive summary judgment.

Williams cannot establish the above element. She testified that she never asked to be reassigned as a nurse and never applied for an open nurse position. (Doc. 39-2 at 73-74). Although she did not need to formally apply, Williams had to at least make a "reasonable attempt to demonstrate to [KDMC] that she [was] interested in the job." *Owens*, 343 F. App'x at 24 (quoting *Grant v. Harcourt Brace Coll. Publishers*, No. 98-3829, 1999 WL 717982, at *4 (6th Cir. Sept. 9, 1999)). Williams cites no evidence that indicates any decisionmaker at KDMC knew she wanted to remain at the hospital as a nurse or be rehired when nursing positions became available. Thus, her failure-to-rehire claim fails as a matter of law.

The record shows that Williams was a good employee during her time at KDMC. However, "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1090-91 (6th Cir. 1984). "As long as employers do not act with discriminatory intent, they may eliminate positions in the name of economic necessity or efficiency, even when those positions are held by more senior workers." *Wilson*, 932 F.2d at 517. There is no genuine dispute that this is precisely what happened here.[3]

---

3) Even if the Court were to assume that Williams had made a prima facie case, KDMC would still be entitled to summary judgment because she has not shown that KDMC's nondiscriminatory explanation is pretext for age discrimination. For the reasons stated *supra*, there is no evidence that KDMC's explanation (1) has no basis in fact, (2) did not actually motivate KDMC, or (3) was insufficient to warrant KDMC's conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

### III.  CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS HEREBY ORDERED** as follows:

(1)     Ashland Hospital Corporation's Motion for Summary Judgment (Doc. 39) is **GRANTED** in full;

(2)     Joyce Williams' federal and state-law claims are hereby **DISMISSED WITH PREJUDICE**;

(3)     This case is hereby **STRICKEN** from Court's active docket; and

(4)     A Judgment shall be entered contemporaneously herewith.

This 13th day of July, 2015.



B:\DATA\Opinions\Ashland\0-13-153 Williams MOO.wpd